UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-CR-20083-CMA

UNITED STATES OF AMERICA

v.

NIKITA S. HERMESMAN

        Defendant.

_____/

### AGREED FACTUAL BASIS FOR GUILTY PLEA

Beginning in or around at least November 2017, and continuing through in or around June 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, NIKITA S. HERMESMAN ("HERMESMAN" or "Defendant"), did knowingly and willfully combine, conspire, confederate, and agree with his co-conspirators, including Khalid Satary, Michael Lewin, Jason Santini, Dr. Steven Burack, Co-Conspirator 1, and others, in violation of Title 18, United States Code, Section 1349, to commit health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347. Furthermore, Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

HERMESMAN, a resident of San Antonio, Texas, was an owner and operator of HCC Management Group LLC ("HCC") and Hermesman HCMG LLC ("HCMG"). HERMESMAN and co-conspirators conspired to refer medically unnecessary doctor's orders for laboratory testing, including genetic tests, to laboratories in exchange for kickbacks and bribes. The laboratories to which HERMESMAN and his co-conspirators referred these medically unnecessary tests included Clio Laboratories LLC ("Clio"), Performance Laboratories LLC ("Performance"), and others. The laboratories billed for performing the medically unnecessary tests, and health care benefit programs, including Medicare, and grant programs paid the laboratories for those claims.

HERMESMAN and other co-conspirators engaged "downline marketers," such as Lewin, Santini, and Co-Conspirator 1, to purchase doctor's orders to refer to the laboratories regardless of medical necessity. For example, HERMESMAN and the "downline marketers" would offer and pay illegal kickbacks and bribes to doctors, including Steven Burack, to sign doctor's orders for genetic tests that were medically unnecessary and ineligible for reimbursement, as the doctors did not meet with or examine the beneficiaries, were not treating the beneficiaries for cancer or symptoms of cancer or other diseases, and did not use the test results in the treatment of the beneficiaries.

HERMESMAN and the "downline marketers" provided the doctors with pre-filled prescriptions that pre-selected which genes the doctors would order to be tested for the beneficiaries. HERMESMAN and the "downline marketers" knew that the genes selected to be tested were based on how much Medicare reimbursed for the tests, regardless of the medical history, physical findings, or medical needs of each specific beneficiary.

HERMESMAN and other co-conspirators would then refer the doctor's orders for the medically unnecessary tests to laboratories in exchange for kickbacks and bribes. For example, Satary, through Clio, Performance, and Alpha Medical Consulting Inc., paid illegal health care kickbacks and bribes to HERMESMAN for the doctor's orders. HERMESMAN received these illegal health care kickbacks and bribes through his companies HCC and HCMG. The amounts Satary paid HERMESMAN reflected portions of the funds Medicare reimbursed Clio and Performance for performing medically unnecessary genetic tests. HERMESMAN and other co-conspirators concealed and disguised the scheme by creating sham invoices and documents, including those that disguised the kickbacks and bribes as payments for purported marketing services. Once laboratories such as Clio and Performance paid HERMESMAN, he would then make payments from HCC and HCMG to Co-Conspirator 1 through various companies including Company 1. HERMESMAN would also make payments from HCC and HCMG to Lewin and Santini through Palm Sales LLC.

Beginning in or around at least November 2017, and continuing through in or around June 2023, HERMESMAN and his co-conspirators referred medically unnecessary genetic tests to Clio, Performance, and others. HERMESMAN knew that the tests were not medically necessary and that they were not ordered by a doctor treating the patients for any specific medical problem, symptom, illness, or diagnosis. Clio and Performance billed Medicare approximately $23,867,265 in medically unnecessary claims for genetic testing. Medicare paid approximately $7,728,257 of these claims. HERMESMAN received approximately $2,389,140 in proceeds of the fraud.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all the facts known

to me concerning criminal activity in which I and others engaged. I make this statement knowingly and voluntarily and because I am in fact guilty of the crimes charged.

Date: 5/7/24        By: _____
                         NIKITA S. HERMESMAN
                         Defendant

Date: 5-7-24        By: _____
                         JACK GOLDBERGER
                         MATTHEW GOLDBERGER
                         Counsel for Defendant

Date: 5-7-24        By: _____
                         REGINALD CUYLER JR.
                         Trial Attorney